## The Greenwood Volunteer Fire Company *vs.* Frank Dearden *et al.*

### APRIL 16, 1940.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is a petition for a writ of mandamus to compel the auditor of the city of Warwick to submit to the treasurer of that city a proper voucher for the payment of a certain sum of money which the petitioner claims is due it from the city, and to compel the treasurer to honor such voucher. After a hearing in the superior court, a justice of that court granted the petition. From that final judgment of the superior court, the respondents appealed to this court.

The petitioner is one of seven volunteer fire companies in the city of Warwick intended to be benefited by the following resolution of the city council making appropriations for the fiscal year commencing February 1, 1939: "Fire Control. Aid and Support of Volunteer Fire Companies to be paid under the supervision of the City Council Fire Committee and for payment of use of water—$24,900.00." The city has no regular fire department and these volunteer fire companies furnish all the fire protection in the city. Since the year 1932, when Warwick became a city, and for a long time prior thereto when it was a town, it was the usual practice to make a lump sum appropriation in aid of the volunteer fire companies. Such sum was apportioned, almost invariably, in equal shares among them. The money, which each company received, was expended by it without any restrictions being imposed by the city council or the financial town meeting.

In 1939, however, the fire committee of the city council undertook to require each company to sign the following agreement as a prerequisite to receiving its equal share of the sum appropriated by the above-quoted resolution:

"THIS AGREEMENT, made this            day of February, 1939, by and between the City of Warwick, acting by and through its Committee on Water and Fire Protection, hereinafter called the City, and the Fire Company, hereinafter called the Fire Company, WITNESSETH:

"1.)    The City agrees to pay and the Company agrees to accept the sum of $3,500.00 less its share of telephone expense, in twelve equal monthly installments, on the express condition that no part of said money will be used for the purchase of fire fighting apparatus, it being the intention of the parties hereto that the City will purchase new apparatus when its committee on Water and Fire Protection deems it advisable. All purchases of fire apparatus by the City will be made in accordance with the recommendations of the New England Fire Rating Association.

"2.) It is further agreed that the company will furnish the Committee on Water and Fire Protection semi-annually statements of its financial condition as of June 30 and December 31.

"3.) Title to all apparatus purchased by the City under this agreement shall remain in the City.

"IN WITNESS WHEREOF, the parties have executed this agreement this       day of February, 1939."

The petitioner and one of the other companies refused to sign such an agreement. Each of the fire companies which signed received an allotment of $3500, payable in twelve monthly installments, while the petitioner was allotted only $3000, payable in the same manner. The respondents admit, or at least they do not deny, that the petitioner is entitled to an additional $500 but only, they contend, if it signs the above-quoted agreement.

On the other hand, the petitioner contends here, and successfully contended in the superior court, that the city council fire committee was without authority to require the petitioner to sign such agreement as a condition precedent to its obtaining an equal share of the city council's appropriation.

Respondents, in their claim of appeal from the final judgment and in their reasons of appeal allege, in effect, that said final judgment is against the law, against the evidence, against the law and the evidence, and against the weight thereof. However, in their brief and argument they admitted that the evidence was substantially undisputed and rested their appeal solely on errors of law. We shall consider such alleged errors in the order and manner in which they are specifically stated in their brief.

The respondents contended before us, first, that the city is not obligated to furnish fire protection to its citizens; second, that, under G. L. 1938, chap. 329, § 33, it is dis-

cretionary whether the city shall appropriate money for the aid and support of volunteer fire companies; third, that the resolution of the city council did not obligate the fire committee to expend the full amount of the appropriation; fourth, that the city council had the right to place the expenditure of this appropriation in the hands of its committee; fifth, that the agreement between the fire companies and the mayor and fire committee—assuming it to have been made as contended by petitioner—was not binding on the city council; sixth, that under its charter the city has power to purchase fire apparatus; and seventh, that the appropriation of $24,900 for the aid and support of volunteer fire companies created no legal right in favor of the petitioner.

The first point states a well-recognized principle of the law of municipal corporations and may be conceded here, especially since the petitioner does not deny but rather contends for the proposition. 6 McQuillan, Municipal Corporations, (2d ed.) § 2590. However, the city's freedom from such an obligation does not seem to be of any consequence in the circumstances of the instant case.

On the second point, there does not appear to be any real controversy between the parties. Both recognize the discretionary nature of § 33, but they differ as to the effect to be given to the section after the city has exercised its discretion by making an appropriation of the city's funds for the purpose or purposes specified in the section. Nevertheless, since the consideration of the language of the section will be necessary in the discussion of other points, it is set out here in full.

> "Any city or town may annually appropriate, in the manner provided by law for appropriations and expenditures by said city or town, a sum to be expended and paid to any volunteer fire company or companies or other organization or organizations created for the

purpose of and engaged in the work of extinguishing fires and suppressing fire hazards within the limits of said city or town, whether said company or companies or organization or organizations be incorporated or not, to be used by said volunteer fire company or companies or organization or organizations aforesaid for equipment, property, salary or other expenses in connection with and for the work of extinguishing fires and suppressing fire hazards within the limits of said city or town. Any such volunteer fire company or organization as aforesaid may be required to present to the town or city council, whenever receiving any money or funds so appropriated, a detailed statement of its assets and liabilities and an estimate of the probable current or operating expenses for a given period and such other information as to its financial condition as said town or city council may require. Nothing herein contained shall be construed to confer such power of appropriating funds for the purpose aforesaid upon any city or town where specific authority for a similar purpose has been otherwise given by law."

Points three and four are so closely related that they may be considered together. Under these points the respondents contend that the city council had the power to place the expenditure of the money appropriated for the fire companies in the hands of its committee on fire, and that such committee was not obligated, in the exercise of the authority given to it, to expend the full amount of the appropriation. These two propositions raise immediately a question of what construction should be placed upon § 33. The language of the section clearly confers a definite power upon a city or town to appropriate, and a right upon a volunteer fire company or volunteer fire companies to receive, public money to be used for a certain specified purpose or purposes.

This power to appropriate is delegated to a city or town which, in the case of the city of Warwick, can be exercised only through the mayor and city council. It is also to be noted that the statute expressly authorizes the city or town

to impose, if it desires, but one condition upon the recipient of the appropriation, namely, "a detailed statement of its assets and liabilities and an estimate of the probable current or operating expenses for a given period and such other information as to its financial condition as said town or city council may require."

It is obvious from this language that, in the instant case, only the mayor and the city council, acting for the city of Warwick, could authorize the grant of public money to the petitioner or prescribe the permitted statutory condition to the grant. In accord with well-recognized principles, such delegated power can not be redelegated by the city. The city council of Warwick could not, therefore, delegate to its committee on fire any part of such power. If it intended, by its resolution, to delegate such power to the fire committee, then the resolution would be invalid.

But the question arises whether the city council attempted to make any such delegation. From a reading of the language of its resolution above quoted, it does not appear to us that it made such attempt. It is our duty to construe this language so as to give effect to the resolution, if possible, and not to destroy it. The words therein contained, that the appropriation is "to be paid under the supervision of the City Council Fire Committee" do not necessarily mean that the city council intended to lodge with its committee a discretion to determine under what condition or conditions each fire company should receive a share of the appropriation; and most certainly they do not, in the slightest degree, purport to convey the authority to the committee to require the fire companies to enter into the explicit and binding agreement hereinbefore quoted. Therefore, even under the terms of the resolution, the committee had no right, in its "supervision" of the expenditure of the appropriation, to impose conditions not contained in the resolution of the city council, and it had no right to with-

hold any of the petitioner's legal share of the aggregate amount appropriated by the city council.

Of course, the city council has the power to provide that the disbursement of the money appropriated shall be under the supervision of a committee, but such supervision must be essentially administrative and not of a policy-making nature. For example, if the council had provided in its resolution that only those fire companies would receive a share of the appropriation who agreed to the financial conditions set out in § 33, it could have provided that the details of executing such agreement or agreements, and the filing of them with the auditor and the treasurer precedent to any disbursement of public moneys under the terms of the resolution, should be done by and under the direction of the fire committee. Such supervision would be administrative and not legislative. We think that the city council did not intend to grant its fire committee any more power than this in the instant case.

The disposition which we have made above of points three and four makes it unnecessary to discuss at length the respondents' point five. We may, however, observe that, this point sets out, in substance, the proposition of law which we applied to points three and four. Neither the fire committee alone nor the mayor and the fire committee together had the power to make any agreement with the fire companies that would be binding upon the city council in the exercise of its legislative discretion under § 33. That discretion vests only in the city, acting legislatively, through its mayor and city council, and such discretion, as hereinbefore stated, cannot be delegated.

Under point six the respondents contend that the city has power to purchase fire apparatus, even though it has no power to engage firemen and set up a permanent, paid fire department. They also make the narrower contention that the city has the right to purchase fire apparatus to

protect its own property. We need not consider either of these contentions as, in the circumstances here, they are not before us for decision.

Finally, under point seven, respondents contend that, in any event, the general appropriation of $24,900 for aid and support of volunteer fire companies is too indefinite to confer any legal right on the petitioner which can be enforced by mandamus. It is true that the city could repeal this appropriation if it wished. But that does not answer the question here, because the fact is that the city has not repealed the appropriation; but rather it is admitted that this appropriation has been apportioned among the several companies in equal shares, and that such share has been paid to each company, except the petitioner and one other company, which have been denied a portion of their share of the appropriation only because they have refused to sign the agreement presented to them by the fire committee of the city council.

It is also true, as argued by respondents, that, in the resolution of the city council, there is no specific appropriation of any sum of money expressly to the petitioner. This lack of definiteness and certainty in the alleged ministerial duties which they have refused to perform ordinarily would be a sound objection to the issuance of a writ of mandamus to the respondents. *McLyman* v. *Holt,* 51 R. I. 96. But the circumstances of this case are so different from the usual case as to constitute an exception to the application of the general rule.

Here we have a situation where, for a long period of time, annual appropriations have been regularly made for these volunteer fire companies in the same manner as the instant resolution, and the appropriations regularly apportioned equally between these seven companies without any confusion or objection. Indeed, in the present instance, the respondents have already caused to be paid, from this

appropriation for the year 1939, the sum of $3500 to each of the fire companies which signed the agreement, and $3000 each to the petitioner and one other company which refused to sign. Further, respondents admit that the petitioner is entitled to receive an additional $500, if it will also sign such agreement. In other words, there is no doubt or uncertainty as to the amount due or the right of petitioner to receive it, if the condition which the respondents contended is an indispensable prerequisite to the petitioner receiving such amount is held to be invalid.

Since we have held that the fire committee was without authority to require the petitioner to sign such an agreement, and, since respondents say that petitioner's refusa_ to sign is the only barrier to their taking the necessary official steps to cause payment of the amount in question to be made to the petitioner, it follows that there is now no legal obstacle in the way to the performance by these respondents of their duties. They must, therefore, perform those duties.

For the reasons stated, we find no error in said final judgment of the superior court in ordering the superior court's writ of mandamus to issue to these respondents as prayed for by the petition.

The appeal of the respondents is accordingly denied and dismissed, said final judgment of the superior court is affirmed, and the cause is remanded to the superior court for further proceedings.

*Michael De Ciantis*, for Petitioner.

*Edward L. Godfrey*, City Solicitor of Warwick, for Respondents.